**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| ANDRE JAMEL DAVIS *and* K.L.D.,<br><br>Plaintiffs,<br><br>v.<br><br>RAYMOND FORSDAHL, *et al.*,<br><br>Defendants. | Civil Action No. 23-2313 (JXN)(MAH)<br><br><br>**OPINION** |

**NEALS**, District Judge

The Court has seen a notable increase in cases like this one. They follow the same pattern: police stop a car. The driver cannot or does not produce a license, insurance, or registration. Police tow the car. The driver sues the police department, officers, and the tow truck company for malicious prosecution, false arrest, illegal search and seizure, conversion, unjust enrichment, and due process and equal protection violations. The driver claims the defendants infringed on their "right to travel" because they were not driving "in commerce." These arguments are meritless, and the claims fail as a matter of law.

Before the Court are motions to dismiss Plaintiffs Andre Jamel Davis ("Davis") and K.L.D.'s (collectively, "Plaintiffs") Second Amended Complaint (ECF No. 89) filed by: (1) Defendants Sergeant Raymond Forsdahl ("Forsdahl"), Officer Brandon McNeil ("McNeil"), and the Borough of Leonia d/b/a Leonia Police Department ("Leonia") (collectively, "Leonia Defendants") (ECF No. 90); and (2) Defendant Peter Sassano and Sano's Broadview Corp d/b/a Sano's Towing ("Sano's") (collectively, "Sano Defendants"; with Leonia Defendants,

1

"Defendants")[1] (ECF No. 91). Plaintiffs opposed, (ECF Nos. 93, 95), and Defendants replied (ECF Nos. 102, 103). Also before the Court is Plaintiffs' motion for reconsideration of the Court's Order granting the Sano Defendants' Adjournment Request. (ECF No. 100.) The Sano Defendants opposed. (ECF No. 104). Finally, before the Court is Plaintiffs' motion to strike Defendants' Reply. (ECF No. 108.)

Jurisdiction and venue are proper pursuant to 28 U.S.C. §§ 1331 and 1391, respectively. The Court has carefully considered the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure[2] 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, the motions to dismiss filed by the Leonia Defendants (ECF No. 90) and the Sano Defendants (ECF No. 91) are **GRANTED**, and the Second Amended Complaint (ECF No. 89) is **DISMISSED** *with prejudice*. Plaintiffs' motions for reconsideration (ECF No. 100) and to strike Defendants' Reply (ECF No. 108) are **DENIED** *as moot*.

I.      **BACKGROUND**[3]

    A.      **Statement of Facts**[4]

The claim arises from a traffic stop involving Davis and Leonia police officers. On March 21, 2023, at approximately 1:15 PM, Leonia police officers stopped and detained Plaintiff for driving without a valid license, valid registration, or insurance coverage for his vehicle. In pertinent

---

[1] Plaintiff initiates legal proceedings against the Sano Defendants, using the names "Peter Sassano" and "Sano's Towing" interchangeably. Based on this usage, the Court concludes that Plaintiff is collectively referring to Peter Sassano and Sano's Towing. For clarity and consistency, the Court has decided to refer to these parties jointly as "Sano Defendants."

[2] "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

[3] The Court adopts the Statement of Facts and Procedural History in part from the Leonia Defendants' Moving Brief. (*See* Leonia Moving Br. at *6–7, ECF No. 90-1.) Pincites preceded by an asterisk (*) indicate ECF pagination.

[4] The factual allegations are taken from the Second Amended Complaint and are accepted as true. *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010).

part, Plaintiffs' Second Amended Complaint describes the stop:

23.     On or about March 21, 2023, at approximately 13:15 hrs., Claimant was touring in a Black 2023 Toyota 4runner SR5 TRD with the automobile's [foreign] license plates that read "NATIVE." FORSDAHL, under color of law and without probable cause or reasonable suspicion, placed the Claimant under custodial arrest in violation of IV Amendment to the U.S. Constitution and the New Jersey Constitution Article I section 20, at the intersection of Broad and East Sheff in Bergen County, NJ.

24.     FORSDAHL, exited his vehicle, approached the passenger side and began to make demands of the Claimant.

25.     FORSDAHL, claimed that the reason for the custodial arrest was due to him unconstitutionally searching for private protected information [Driver's Privacy Protection Act (DPPA)] in the State of New Jersey's database regarding the plates and falsely claiming, "the plates came back to a Chevy."

26.     FORSDAHL, began interrogating the Claimant by demanding the Claimant's drivers license, registration and proof of insurance.

27.     Claimant, questioned the Constitutionality of the stop and informed FORSDAHL that he was not a driver nor a U.S. Citizen, but only in his private capacity and did not want to do business with FORSDAHL.

. . . .

30.     The Claimant informed FORSDAHL that he, as owner of the automobile, had no contract with "LEONIA" or the "LPD" and that he was touring and enjoying his right to life, liberty, property, and the pursuit of happiness, as guaranteed to "all persons" in the New Jersey State Constitution Article 1 section 1 and the Bill of Rights.

. . . .

35.   After Claimant exited the automobile, FORSDAHL demanded again for some form of ID and proof of ownership of the automobile.

. . . .

51.     FORSDAHL, after refusing Claimant's documentation, and Claimants' requests for identification, request for a supervisor and the

purpose of initiating the unconstitutional custodial arrest, informed the Claimant that he does not have a drivers license, registration or insurance and his automobile would be towed and called SANO's.

. . . .

57.     FORSDAHL wrote citations accusing Claimant of violating the State of New Jersey Motor Vehicle Codes §39:3-40 /[driving while license suspended] §39:3-4 [registration] / §39:6B-2 [failure to produce insurance].

58.     The citations reported information contrary to the Claimants' presentments.

59.     The Claimant did not commit these alleged citations. Claimant suffered significant harm as the result of the Defendants' conduct, including but not limited to:

- Loss of Liberty and freedom;
- Embarrassment and humiliations;
- Loss of life's pleasures;
- Deprivation of property;
- Interference with daily activities;
- Loss of earnings;
- Loss of earning capacity;
- Loss of credit and credit worthiness.

(Second Am. Compl. ("SAC") ¶¶ 23–59, ECF No. 89.)

**B.     Procedural History**

On April 27, 2023, Davis filed suit against Defendants in this Court. (*See* Compl., ECF No. 1.) On June 29, 2024, the Court granted the Leonia Defendants' motion for judgment on the pleadings, granted the Sano Defendants' motion to vacate entry of default and to dismiss Davis's Complaint, denied Davis's motion for default judgment, and dismissed the Complaint without prejudice. (ECF Nos. 64, 65.)

On September 6, 2024, Davis filed an Amended Complaint asserting various civil rights and state law violations against Defendants. (*See generally* Am. Compl., ECF No. 71.) On

September 27, 2024, and October 10, 2024, respectively, the Leonia and Sano Defendants filed motions to dismiss the Amended Complaint pursuant to Rule 12(b)(6). (ECF Nos. 74, 76.) On April 16, 2025, this Court again granted Defendants' motions to dismiss, and dismissed Davis's Complaint *without prejudice*, but with leave to file an Amended Complaint consistent with this Court's Opinion. (ECF Nos. 85, 86.)

On June 16, 2025, Davis filed a Second Amended Complaint, adding K.L.D. as a plaintiff and removing certain individual Leonia officers as defendants. Plaintiffs bring claims for Abuse of Process as to Forsdahl and McNeil (Count I); Racial Profiling as to Forsdahl (Count II); Unlawful Profiling as to McNeil (Count III); Unlawful Detention as to Forsdahl and McNeil (Count IV); 42 U.S.C. § 1983 "Inadequate Procedures as to as to Leonia, Forsdahl, and McNeil" (Count V); Equal Protection Clause as to Leonia, Forsdahl, and McNeil (Count VII (sic)); Procedural Due Process (Taking Automobile Absent Due Process) as to Forsdahl, Leonia, McNeil and Sano's (Count VIII); Conversion as to Leonia (Count IX); Unjust Enrichment as to Leonia (Count X); Improper/Unjust Warrantless Seizure as to Leonia, Forsdahl and Sano's (Count XI); New Jersey Civil Rights Act, N.J.S.A. 10:6-2 as to Forsdahl and McNeil (Count XII). (*See* SAC.)

Defendants moved to dismiss the Second Amended Complaint. (*See* Leonia Mot., ECF No. 90; Sano Mot., ECF No. 91.) Plaintiffs opposed (*see* Pls.' Opp'n to Leonia, ECF No. 93; Pls.' Opp'n to Sano, ECF No. 95), and Defendants replied (*see* Leonia Reply, ECF No. 102; Sano Reply, ECF No. 103). The matter is now ripe for determination.

## II.    LEGAL STANDARD

### A.    Rule 12(b)(6)

Rule 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted." For a complaint to survive dismissal under the Rule, it must contain sufficient

factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (cleaned up). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [their] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). Restatements of a claim's elements are legal conclusions and, therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

The Court holds *pro se* complaints to less stringent standards than formal pleadings drafted by lawyers. *See Dickerson v. N.J. Inst. of Tech.*, No. 18-8344, 2019 WL 6032378, at *4 (D.N.J. Nov. 14, 2019) (citing *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004)). This more liberal construction of *pro se* complaints does not, however, absolve a *pro se* plaintiff from the need to adhere to the Federal Rules of Civil Procedure. *See, e.g.*, *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015) ("[W]e nonetheless review [a *pro se*] pleading to ensure that it has 'sufficient factual matter; accepted as true; to state a claim to relief that is plausible on [its] face.'" (quoting *Iqbal*,

556 U.S. at 678)); *Badger v. City of Phila. Off. of Prop. Assessment*, 563 F. App'x 152, 154 (3d Cir. 2014) ("Complaints filed pro se are construed liberally, but even 'a pro se complaint must state a plausible claim for relief.'" (quoting *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013))); *Herron v. Guralnick*, No. 19-17699, 2020 WL 3542344, at *2 (D.N.J. June 30, 2020).

Rule 8(a)(2) requires that a complaint set forth claims with enough specificity to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The complaint must contain "sufficient facts to put the proper defendants on notice so that they can frame an answer" to the plaintiff's allegations. *Dist. Council 47, AFSCME v. Bradley*, 795 F.2d 310, 315 (3d Cir. 1986). Importantly, a plaintiff must "specify which defendants performed which acts." *Zuniga v. Am. Home Mortg.*, No. 14-2973, 2016 WL 886214, at *2 (D.N.J. Mar. 7, 2016).

## III.    **DISCUSSION**

The Court addresses each of Plaintiffs' Counts in turn.

### A.    **Abuse of Process (Count I)**

In the Complaint, Plaintiffs allege,

> Forsdahl and McNeil in retaliation and furtherance of their own agenda, malciously [sic], intentionally and unlawfully caused Claimants to be injured by denying their incorporated 5th Amendment right to due process, Fourth Amendment right to be secured against warrantless searches and seizures and the Fourteenth Amendment right to due process.

(SAC ¶ 102.)

"Although the prosecution of traffic offenses is regarded as quasi-criminal in nature, New Jersey courts have treated this type of claim under the civil standards for malicious use of process and malicious abuse of process, as opposed to the criminal standard for malicious prosecution." *Dunne v. Township of Springfield*, No. 08-5605, 2011 WL 2269963, at *4 (D.N.J. Jan. 31, 2011)

(cleaned up) (citing *Vickey v. Nessler*, 230 N.J. Super. 141, 149 (App. Div. 1989)). Malicious *use* of process and malicious *abuse* of process are two separate and distinct causes of action. *Id.* at *8.

To successfully bring a claim for malicious use of process, the plaintiff must show: "(1) an action was instituted by the defendant against the plaintiff; (2) the action was motivated by malice; (3) there was an absence of probable cause to prosecute; (4) the action was terminated favorably to plaintiff; and (5) the plaintiff has suffered a special grievance." *Id.* at *4 (citing *LoBiondo v. Schwartz*, 199 N.J. 62, 90 (2009)). In contrast, to establish a claim for malicious abuse of process, the plaintiff must show: "(1) an ulterior motive and (2) some further act after an issuance of process representing the perversion of the legitimate use of process." *Shann v. Atl. Health Sys.*, No. 12-4822, 2017 WL 5260780, at *27 (D.N.J. 2017) (quoting *Stolinski v. Pennypacker*, 772 F. Supp. 2d 626, 644 (D.N.J. 2011)). To be clear, "the process that must have been abused includes the summons, mandate, or writ used by a court to compel the appearance of the defendant in a legal action or compliance with its order." *Id.*; *see also Voytko v. Ramada Inn of Atl. City*, 445 F. Supp. 315, 325 (D.N.J. 1978). "[B]asic to the tort of malicious abuse of process is the requirement that the defendant perform 'further acts' after issuance of process which represent the perversion or abuse of the legitimate purposes of that process." *Lopez v. City of Plainfield*, No. 12-4976, 2017 WL 370781, at *16 (D.N.J. Jan. 25, 2017) (quoting *Baglini v. Lauletta*, 338 N.J. Super. 282, 294 (App. Div. 2001)).

"Importantly, 'process is not abused unless after its issuance the defendant reveals an ulterior purpose he had securing it by committing 'further acts' whereby he demonstrably uses the process as means to coerce or oppress the plaintiff.'" *Shann*, 2017 WL 5260780, at *28 (quoting *Ruberton v. Gabage*, 280 N.J. Super. 125, 130 (App. Div. 1995)) (explaining that abuse of process requires application of judicial power to achieve improper ends). "The typical abuse of process

claim involves leveraging some attachment process or complaint in order to achieve some other end." *Stolinski*, 772 F. Supp. at 644; *see also Wozniak v. Pennella*, 373 N.J. Super. 445, 461–64 (App. Div. 2004) (affirming malicious abuse of process charge where landlord filed a criminal complaint against a tenant as leverage to induce the tenant to withdraw lawsuit against the landlord).

The Court finds that Plaintiffs' abuse-of-process claim fails as a matter of law because the Second Amended Complaint contains no allegations that Defendants "perverted [the] use of process after it has been issued." *Shann*, 2017 WL 5260780, at *28 (alteration in original) (quoting *Ash v. Cohn*, 119 N.J.L. 54, 58 (1937)). Nor could Plaintiffs make such allegations. From the tickets issued to Davis and the subsequent Operations Report by the Leonia Police Department ("Police Report"), it appears that Davis was driving a vehicle in Leonia without a valid license, registration, or insurance. (*See* Leonia Mot. Ex. B ("Police Report"), ECF No. 90-4; Leonia Mot. Ex. C ("Municipal Case Summaries"), ECF No. 90-5.[5]) Thus, it is clear Leonia police issued tickets to Davis "to determine whether [he] was guilty of the offenses in question, which is precisely the purpose 'intended by the law.'" *Dunne v. Township of Springfield*, 500 F. App'x 136, 139 (3d Cir. 2012) (quoting *Rose v. Bartle*, 871 F.2d 331, 350 n.17 (3d Cir.1989)). Nor does the Second Amended Complaint allege "some further act after an issuance of process representing the perversion of the legitimate use of process." *See Shann*, 2017 WL 5260780, at *27. In any event,

---

[5] In deciding a motion to dismiss, courts generally consider the allegations in the complaint, exhibits attached to the complaint and matters of public record. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1197 (3d Cir. 1993) ("Courts have defined a public record, . . . to include criminal case dispositions[,] . . . letter decisions of government agencies, . . . and published reports of administrative bodies . . . ."). The Leonia Defendants annexed the Operations Report and Municipal Case List to the Certification of Christopher C. Botta, Esq. as Exhibits B and C, respectively, and submitted the documents with the moving papers. These are public records that the Court may take judicial notice of for the purposes of this Rule 12(b)(6) motion. *Id.*

Defendants had probable cause to issue the tickets to Plaintiff, which defeats any claim for malicious use of process. *See Stolinski*, 772 F. Supp. 2d at 638.

Accordingly, Plaintiffs' abuse of process claim (Count I), or any derivation therefrom, is **dismissed with prejudice**.

### B.   Racial Profiling/Equal Protection (Counts II, III, and VII)

Plaintiffs also bring equal protection claims under the Fifth and Fourteenth Amendments. (SAC ¶¶ 105–13, 128–41.) "In order to bring an equal protection claim based on racial profiling under 42 U.S.C. [§] 1983, Plaintiff[s] must show that the officer's conduct (1) had a discriminatory effect and (2) was motivated by a discriminatory purpose." *Mitchell v. Township of Willingboro*, No. 11-1664, 2011 WL 3203677, at *5 (D.N.J. July 26, 2011) (citing *Bradley v. United States*, 299 F.3d 197, 205–06 (3d Cir. 2002)); *Velez v. Fuentes*, No. 15-6939, 2016 WL 4107689, at *4 (D.N.J. July 29, 2016). *See also Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264–66 (1977) (race discrimination); *Alvin v. Calabrese*, 455 F. App'x 171, 177 (3d Cir. 2011). Demonstrating discriminatory effect requires a plaintiff to "show that [he] is a member of a protected class and that [he] was treated differently from similarly situated individuals in an unprotected class." *Bradley*, 299 F.3d at 206. "[M]ere invocation of the phrase 'racial profiling' without more, is simply a legal conclusion, not a factual basis for a claim." *Mitchell*, 2011 WL 3203677, at *5.

The Second Amended Complaint, however, does not allege facts showing Davis was racially profiled. Plaintiffs merely say he was, without more. Accordingly, Plaintiffs' equal protection claim is bereft of proof. Even assuming Plaintiffs' membership in a protected class, Plaintiffs have not alleged facts to show "that [Davis] was treated differently from similarly situated individuals in an unprotected class." *Bradley*, 299 F.3d at 206. This being Plaintiffs'

Second Amended Complaint, the Court **dismisses with prejudice** Plaintiffs' equal protection claims (Counts II, III, and VII).

### C.      Procedural Due Process (Count VIII)

Plaintiff also alleges Defendants deprived him of procedural due process. (SAC ¶¶ 137–41.) To state a claim for deprivation of procedural due process, a plaintiff "must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law." *Ochner v. Stedman*, 572 F. App'x 143, 148–49 (3d Cir. 2014) (internal quotation marks omitted).

While the Complaint does not identify the particular interest at issue, construing the facts in the light most favorable to Plaintiffs, Plaintiffs appear to argue that the seizure of Davis' vehicle violated his procedural due process rights. Plaintiffs allege

> The automobile was illegally seized by Forsdahl due to LEONIA's unconstitutional ordinances, rules, customs, codes, laws, and practices which are repugnant to the Constitution and null and void, see **Marbury v. Madison, 5th US (2 Cranch) 137, 174,176 (1803).** Thus violating Claimant's Constitutional right to due process. LEONIA failed to announce its intentions (by providing a notice or summons) and give the Claimant a chance to argue against the taking. **United States v. Place,** 462 U.S. 696 (1983): A seizure must be supported by probable cause and must be limited in duration and scope.

(SAC ¶ 139) (emphasis in original). Plaintiffs further allege that the traffic stop and the demand for Davis's license and registration were violations of Plaintiffs' due process rights.

The Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. Const. amend. IV. A traffic stop is a "seizure" within the meaning of the Fourth Amendment, "even though the purpose of the stop is limited and the resulting detention quite brief." *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). *See also United States v. Arvizu*, 534 U.S. 266, 273 (2002);

11

*United States v. Wilson*, 413 F.3d 382, 386 n.3 (3d Cir. 2005). Because an ordinary traffic stop is analogous to an investigative detention, it has been historically reviewed under the investigatory detention framework first articulated in *Terry v. Ohio*, 392 U.S. 1, 30 (1968). *See, e.g., United States v. Elias*, 832 F.2d 24, 26 (3d Cir.1987) (describing "*Terry*-like traffic stop[s]."); *United States v. Delfin-Colina*, 464 F.3d 392, 396 (3d Cir. 2006).

Under *Terry*, the Fourth Amendment permits an officer to "conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). Though reasonable suspicion is a generally undemanding standard, a police officer has the initial burden of providing the "specific, articulable facts" to justify a reasonable suspicion to believe that an individual has violated the traffic laws. *See United States v. Cortez*, 449 U.S. 411, 416 (1981) (quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 884 (1975)). And a reviewing court must consider whether the "rational inferences from those facts, reasonably warrant [the] intrusion." *Terry*, 392 U.S. at 21. Ultimately, the Court must weigh "the totality of the circumstances—the whole picture." *Delfin-Colina*, 464 F.3d at 397 (quoting *United States v. Sokolow*, 490 U.S. 1, 8 (1989)).

A stop is reasonable under the Fourth Amendment when officers have probable cause to believe that the driver violated traffic laws, even if the ultimate charge is not related to the traffic stop. *Id.* An officer's subjective intentions are irrelevant to a Fourth Amendment analysis, and courts do not entertain Fourth Amendment challenges based on the actual motivations of individual officers. *See id.* (collecting cases); *see also Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) ("[The] subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause."); *Estate of Smith v. Marasco*, 318 F.3d 497, 514 (3d Cir. 2003) ("Improper motive, however, is irrelevant to the question whether the objective facts available to

the officers at the time reasonably could have led the officers to conclude that Smith was committing an offense." (citing *Whren v. United States*, 517 U.S. 806, 813 (1996)). Put differently, "any technical violation of a traffic code legitimizes a stop, even if the stop is merely pretext for an investigation of some other crime." *United States v. Mosley*, 454 F.3d 249, 252 (3d Cir. 2006). Taken together, a traffic stop is reasonable when an objective review of the facts shows that an officer possessed specific, articulable facts that an individual was violating a traffic law at the time of the stop. *Delfin-Colina*, 464 F.3d at 398.

Applying these principles, here, the Court finds that the officers possessed reasonable suspicion to stop Davis's vehicle. On the day of the stop, Plaintiffs allege Davis was driving with license plates that did not match his vehicle. (SAC ¶ 25.) Plaintiffs further state that Davis told police "*he was not a driver nor a U.S. Citizen.*" (*Id*. ¶ 27 (emphasis added).) A police officer has reasonable suspicion to pull over someone "operating a vehicle with an invalid license plate." *United States v. Toney*, 124 F. App'x 713, 715 (3d Cir. 2005). *See also Bahgat v. Township of East Brunswick*, 821 F. App'x 134, 136 (3d Cir. 2020) (finding reasonable suspicion where driver had "improperly affixed license plate."). Plaintiff's statements gave the officer additional grounds to investigate further. *Toney*, 124 F. App'x at 715 (driver's "suspicious behavior" justified further investigation). Accordingly, the traffic stop did not deprive Davis of procedural due process.

Nor did seizing Davis's vehicle deprive Plaintiffs of procedural due process. The Third Circuit has made clear that "there is no cognizable Fourteenth Amendment procedural due process claim [when] the state provided a reasonable post-deprivation process to challenge the seizure of property and request its return." *McKenna v. Portman*, 538 F. App'x 221, 224 (3d Cir. 2013); *see also Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the

13

Due Process Clause of the Fourteenth Amendment if a meaningful post[-]deprivation remedy for the loss is available."). Here, New Jersey provides adequate "procedures to recover wrongfully seized property, such as the ability to move in the criminal action for return of his property or the ability to file a separate action for a writ of replevin." *Revell v. Port Auth. of N.Y., N.J.*, 598 F.3d 128, 139 (3d Cir. 2010) (citations omitted). Plaintiffs have not alleged, let alone adduced evidence to show, that New Jersey's post-deprivation procedures were inadequate. *St. Martin v. W. Windsor Twp. Police Dep't*, 753 F. Supp. 3d 369, 401 (D.N.J. 2024).

In addition, insofar as the Second Amended Complaint can be read to allege deprivation of substantive due process, it fails to state a claim for relief. "Conduct can violate substantive due process if it shocks the conscience, which encompasses only the most egregious official conduct." *Newman v. Beard*, 617 F.3d 775, 782 (3d Cir. 2010) (cleaned up). Plaintiff's own description of the traffic stop does not shock the conscience. "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham*, 490 U.S. at 395). Likewise, Plaintiff's probable cause and undue risk claims are properly analyzed under the Fourth Amendment, as opposed to generalized substantive due process, since "[t]he Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it." *Id.* at 274. Relying on substantive due process is not appropriate "when doing so . . . duplicate[s] protection that a more specific constitutional provision already bestow[s]." *Id.* at 288 (Souter, J., concurring in the judgment); *Velez*, 2016 WL 4107689, at *4–5.

Accordingly, the Court **dismisses with prejudice** Plaintiffs' due process claim (Count VIII).

**D.**     **Unlawful Detention as to Forsdahl and McNeil (Count IV); Inadequate Procedures as to Leonia Defendants (Count V); Conversion as to Leonia (Count IX); Unjust Enrichment as to Leonia (Count X); Improper/Unjust Warrantless Seizure as to Leonia, Forsdahl, and Sano's (Count XI)**

The Second Amended Complaint describes claims under 42 U.S.C. § 1983 for falsely arresting and imprisoning Plaintiffs; illegally seizing Davis's vehicle; and municipal liability for permitting a policy and or custom that resulted in Davis's detention and his vehicle's seizure.

To prevail on a Section 1983 claim, a plaintiff must show the violation of a right secured by the Constitution or laws of the United States and that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citing 42 U.S.C. § 1983).

### i.     *False Arrest*

Section 1983 claims for false arrest or imprisonment derive from the Fourth Amendment's protection against unreasonable seizures. *Groman v. Township of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995); *Tucker v. City of Philadelphia*, 679 F. Supp. 3d 127, 137 (D.N.J. 2023); *Garcia v. County of Bucks*, 155 F. Supp. 2d 259, 265 (E.D. Pa. 2001). To state a false arrest claim under Section 1983, a plaintiff must allege facts showing he was arrested without probable cause. *Mikhaeil v. Santos*, 646 F. App'x. 158, 162 (3d Cir. 2016); *Groman*, 47 F.3d at 634; *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988). *See also Wildoner v. Borough of Ramsey*, 162 N.J. 375, 389 (2000) ("[P]robable cause is an absolute defense to Plaintiff's false arrest, false imprisonment, and malicious prosecution claims.").

"The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). But while probable cause does not require a

15

specific amount of proof, it does require a particularized and "reasonable ground for belief of guilt." *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983)). Thus, probable cause for an arrest exists "whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." *Tucker*, 679 F. Supp. 3d at 137 (quoting *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002)).

Here, Plaintiffs do not dispute that Davis was driving in Leonia with an invalid license plate and without a license, insurance, or registration, as supported by the Police Report and Municipal Case List. (*See* Police Report; Municipal Case List.) Accordingly, Leonia police had probable cause to stop Davis, issue a ticket, and seize his vehicle.

When an officer lawfully stops a vehicle, the officer is normally permitted to inquire into other, unrelated matters so long as they do not "measurably extend the duration of the stop." *Arizona v. Johnson*, 555 U.S. 323, 333 (2009). "Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). Plaintiffs have not alleged any facts to even suggest that Plaintiffs were detained for a longer period than necessary.

Accordingly, Plaintiffs' false arrest and imprisonment claim under Section 1983 (Count IV) fails as a matter of law and is **dismissed with prejudice**.

### ii.    *Claims Relating to the Seizure of the Vehicle (Counts IX, X, XI)*

Plaintiffs allege that towing Davis's car constituted an illegal seizure under the Fourth Amendment and a taking under the Fifth Amendment. Both claims fail.

The Fourth Amendment protects "against unreasonable searches and seizures." U.S. Const. amend. IV. It follows that "all searches and seizures must be reasonable." *Kentucky v. King*, 563

16

U.S. 452, 459 (2011). Seizures without a warrant are "presumptively unreasonable." *Id.* (quoting *Groh v. Ramirez*, 540 U.S. 551, 559 (2004)). But, as with any rule, there are exceptions. One is for "community caretaking functions." *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973). The community caretaking exception recognizes that police officers perform functions "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Id.* Therefore, an officer may seize property without a warrant to "ensure the safety of the public and/or the individual, regardless of any suspected criminal activity." *Vargas v. City of Philadelphia*, 783 F.3d 962, 971 (3d Cir. 2015) (quoting *United States v. King*, 990 F.2d 1552, 1560 (10th Cir.1993)).

Towing and impounding Davis's car falls within the community caretaking exception. As the Third Circuit recognized, "[u]nder the caretaking exception, a city may reasonably seize a vehicle whose operator cannot lawfully remove it because he or she lacks a license, registration, or insurance." *Honda Lease Tr. v. Malanga's Auto.*, 152 F.4th 477, 489 (3d Cir. 2025). "Similarly, it is reasonable for a city to retain possession of a vehicle until the vehicle's owner or operator can demonstrate that the vehicle can be safely and lawfully removed." *Id.* Davis drove his vehicle without a driver's license, insurance, or registration in violation of N.J.S.A. 39:3-29. New Jersey law requires police officers to "remove any unregistered vehicle from the public highway." N.J.S.A. 39:3-4. And police cannot release an impounded vehicle "unless proof of valid motor vehicle insurance for that vehicle is presented to the law enforcement authority." N.J.S.A. 39:3-40.6. In other words, when the police removed Davis's unregistered vehicle from the road, they did so under another state law, "totally divorced" from the investigation of crimes. *Cady*, 413 U.S. at 441. Accordingly, towing and impounding Davis's vehicle does not violate the Fourth Amendment.

Plaintiffs' Fifth Amendment claim fares little better. The Takings Clause of the Fifth Amendment states that "private property [shall not] be taken for public use, without just compensation." *Knick v. Township of Scott*, 588 U.S. 180, 184 (2019). Here, towing and impounding Davis's car was not a taking. When the government tows a vehicle without the owner's consent, "absent any due-process violation, a municipality's retention of a vehicle remains reasonable until the owner or operator of the vehicle demonstrates that it may be safely and lawfully reclaimed, and so no taking can occur if the vehicle is returned promptly after that demonstration has been made." *Honda Lease Tr.*, 152 F.4th at 490. Plaintiffs have not alleged that Davis presented Leonia police proof of a valid license, insurance, or registration. So, impounding Davis's car is not a taking. In any event, the government is not "required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain." *Bennis v. Michigan*, 516 U.S. 442, 452 (1996). Therefore, "[p]roperty seized pursuant to the criminal laws is not a 'taking' justifying compensation." *McKenna*, 538 F. App'x at 224 (3d Cir. 2013). Leonia police towed Davis's vehicle per the state's police power. Thus, Plaintiffs cannot state a viable takings claim.

The Court, consequently, **dismisses with prejudice** Plaintiffs' claims challenging the seizure of his vehicle (Counts IX, X, XI).

### iii. Municipal Liability Against Leonia (Count V)

A plaintiff may not hold a municipality liable for the constitutional violations of a police officer under a theory of *respondeat superior. See Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978). According to *Monell*, a plaintiff must instead show "the existence of a policy or custom that has resulted in a constitutional violation." *Groman*, 47 F.3d at 637 (citing *Monell*, 436 U.S. at 694–95). Even if a municipality's policy or custom is "not unconstitutional itself," *Monell* liability

may still arise "when the policy or custom . . . is the 'moving force' behind the constitutional tort of one of [the municipality's] employees." *Colburn v. Upper Darby Township*, 946 F.2d 1017, 1027 (3d Cir. 1991) (quoting *Polk County v. Dodson*, 454 U.S. 312, 326 (1981)). To establish *Monell* liability this way, a plaintiff must "demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 407 (1997) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). "'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *Brown*, 520 U.S. at 410).

Dismissing Plaintiffs' *Monell* claim is appropriate on several grounds. First, Leonia cannot be liable under *Monell* because Plaintiffs fail to show Defendants violated the Fourth or Fifth Amendments. *Monell* does not authorize a Section 1983 claim against a municipality "based on the actions of one of its officers when in fact . . . the officer inflicted no constitutional harm." *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *see also Reiff v. Marks*, 511 F. App'x 220, 223 (3d Cir. 2013) ("[A] municipality may not be held liable on a failure to train theory when a jury has found that the plaintiff has suffered no constitutional violation."); *Peters v. Brown*, 793 F. App'x 118, 126 (3d Cir. 2019) ("The municipal liability claim . . . fails because there was no underlying constitutional violation by the . . . police defendants."); *St. Martin*, 753 F. Supp. 3d at 405.[6]

---

[6] Plaintiff names the Borough of Leonia d/b/a as Leonia Police Department as a Defendant in this matter. However, the Leonia Police Department is not a local government unit that can be sued independently from the municipality that created it. *See Bonenberger v. Plymouth Township*, 132 F.3d 20, 25. n.4 (3d Cir. 1997) (treating municipality and its police department as a single entity for purposes of Section 1983 liability); *see also Padilla v. Township of Cherry Hill*, 110 F. App'x 272, 278 (3d Cir. 2004). A Police Department is not a separate legal entity, but a department of the municipality. N.J.S.A. 40A:14-118 (municipal police department is "an executive and enforcement function of municipal government."). *See also McGovern v. Jersey City*, No. 98-5186, 2006 WL 42236, at *7 n.4 (D.N.J. Jan.

The Court, therefore, **dismisses with prejudice** Plaintiffs' claims for Unlawful Detention (Count IV); Inadequate Procedures (Count V); Conversion (Count IX); Unjust Enrichment (Count X); and Improper/Unjust Warrantless Seizure (Count XI).

### E.    New Jersey Civil Rights Act (Count XII)

As the NJCRA was modeled after Section 1983, "courts in New Jersey have consistently looked at claims under the NJCRA through the lens of § 1983" and "have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart." *Samoles v. Lacey Township*, No. 12-3066, 2014 WL 2602251, at *15 (D.N.J. June 11, 2014) (internal quotation marks omitted). Because Plaintiffs' Section 1983 claims fail, their NJCRA claims do too. Accordingly, the Court **dismisses with prejudice** Plaintiffs' NJCRA claim (Count XII).

### F.    "Right to Travel" Arguments

Construing the Second Amended Complaint liberally, it appears Plaintiffs argue Defendants infringed on their "right to travel" by preventing Davis from driving a vehicle without a valid license, insurance, or registration.[7] Plaintiffs claim Davis did not need a license, insurance, or registration unless he was traveling "in commerce."[8]

---

6, 2006) (police departments cannot be sued in conjunction with municipalities because police departments are administrative arms of local municipalities, not separate entities).

[7] This argument is popular among "sovereign citizens." *See* Caesar Kalinowski IV, *A Legal Response to the Sovereign Citizen Movement*, 80 Mont. L. Rev. 153, 167 (2019) ("The most common type of Sovereign Citizen claim encountered by local and state police, as well as federal border patrol agents, is the 'right to travel.'"). Sovereign citizens "generally believe that they are neither subject to federal law nor federal courts' jurisdiction." *United States v. Taylor*, 21 F.4th 94, 102 n.6 (3d Cir. 2021). The Second Amended Complaint states, for instance, that Davis is "sui juris in pro per capacity, . . . who at all times relevant is a non-citizen national of the United States domiciled in Lenapehoking." (SAC ¶ 14.) Lenapehoking refers to the territory of the Lenape people, which "stretched from Maryland and coastal Delaware through eastern Pennsylvania, included all of New Jersey, and swept north deep into upstate New York." Mike Weilbacher, *The Lenape and the Land*, Schuylkill Ctr. for Env't Educ. (Nov. 1, 2021), https://schuylkillcenter.org/the-lenape-and-the-land. To the extent the Second Amended Complaint advances sovereign citizen arguments, the Court rejects them as "patently frivolous." *Yun v. New Jersey*, No. 18-1804, 2019 WL 3416773, at *6–7 (D.N.J. July 29, 2019) (collecting cases rejecting sovereign citizen arguments as frivolous).

[8] The Court notes Davis has failed to appear in Leonia Municipal Court to answer the three motor vehicle summonses issued to him on March 21, 2023, and a "Failure to Appear" notice has been served by the Court. (*See* Municipal

Some clarification is in order. The Constitution protects the right to travel, which includes (1) "the right of a citizen of one State to enter and to leave another State," (2) "the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State," and, (3) "for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State." *Saenz v. Roe*, 526 U.S. 489, 500 (1999). The Third Circuit also recognizes the "right to travel locally through public spaces and roadways," *Lutz v. City of York*, 899 F.2d 255, 268 (3d Cir. 1990), though its exact contours remain unclear, *Owner Operator Indep. Drivers Ass'n, Inc. v. Pa. Tpk. Comm'n*, 934 F.3d 283, 294 (3d Cir. 2019) (citation omitted).

The right to interstate travel does not include the right to drive a car. "[B]urdens on a single mode of transportation do not implicate the right to interstate travel." *Id.* at 295 (quoting *Miller v. Reed*, 176 F.3d 1202, 1205 (9th Cir. 1999)). Moreover, "a state may rightfully prescribe uniform regulations necessary for public safety and order in respect to the operation upon its highways of *all* motor vehicles." *Hendrick v. Maryland*, 235 U.S. 610, 622 (1915) (emphasis added). This has been the case since cars were invented. *Kane v. New Jersey*, 242 U.S. 160, 167 (1916) ("The power of a state to regulate the use of motor vehicles on its highways has been recently considered by this court and broadly sustained."). New Jersey's motor vehicle laws are plainly necessary for public safety and well within the state's police power. The government may impose reasonable "time, place and manner restrictions" on local travel. *Lutz v. City of York*, 899 F.2d 255, 269 (3d Cir. 1990). New Jersey's licensing, registration, and insurance laws are sensible restrictions on local travel. Plaintiffs do not argue otherwise, nor can they. Cars are dangerous multi-ton pieces of heavy machinery capable of accelerating to high speeds. It is rational to require drivers to

---

Case Summaries.)

21

demonstrate competency, obtain licenses, register their vehicles, and insure themselves and others against injury.

While the Constitution protects the right to travel, that right is not unlimited. Just as the Constitution does not include the right to drive drunk, it does not include the right to drive a car without a license, registration, or insurance. To the extent Plaintiffs trace their purported injuries to the denial of the right to travel, that argument is rejected.[9]

## IV.   CONCLUSION

For the reasons set forth above, the motions to dismiss filed by the Leonia Defendants (ECF No. 90) and the Sano Defendants (ECF No. 91) are **GRANTED**. Plaintiffs' Second Amended Complaint (ECF No. 89) is **DISMISSED** *with prejudice*. Plaintiffs' motion for reconsideration (ECF No. 100) and motion to strike Defendants' Reply (ECF No. 108) are **DENIED** *as moot*. An appropriate Order accompanies this Opinion.

**DATED: 2/11/2026**

HONORABLE JULIEN XAVIER NEALS
United States District Judge

---

[9] Plaintiffs further assert a violation of the Driver Privacy Protection Act, which is directed only towards private citizens who work at the NJ MVC who impermissibly release an individual's personal information and has no relevance here.

22